**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **MERCANTILE CAPITAL PARTNERS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Hon. Blanche M. Manning** |
| v. | ) | |
| | ) | **Case No. 04 C 5571** |
| **AGENZIA SPORTS, INC., et. al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## <u>MEMORANDUM AND ORDER</u>

Plaintiff Mercantile Capital Partners ("Mercantile"), an Illinois limited partnership,

brought the instant diversity action against persons and individuals, all residents of Minnesota,

involved in the sale of the "RoughRiders," a minor league hockey team ("the Hockey Team" or

"Team"), located in Iowa. The instant matter comes before the Court on Defendant Morrison,

Fenske & Sund's ("Fenske") Motion to Dismiss Pursuant to Federal Rules of Civil Procedure

12(b)(2), 12(b)(3), 12(b)(6) and 9(b). For the reasons set forth herein, this motion is GRANTED

in part as to Count VII but DENIED as to Counts VIII and IX.

## BACKGROUND[1]

In 2003, Mercantile began negotiations with Defendants Agenzia Sports Inc.,

RoughRiders Minnesota, Patrick Forceia, and Catherine Forceia ("the Forceia Defendants") to

purchase an interest in the Hockey Team. At that time, the Forceia Defendants owned 100% of

the Team.[2] The parties subsequently reached an agreement whereby Mercantile would purchase

a 75% interest in the Hockey Team in exchange for $2.1 million.

Defendant Fenske, a Minnesota law firm, assisted the Forceia Defendants in completing

this transaction. Prior to closing, Mercantile discovered that the assets of the Team were

encumbered by security interests ("the Security Interests") held by two Minnesota banks ("the

Banks"). After Mercantile brought this fact to the attention of the sellers, Fenske allegedly filed

terminations of the Security Interests with the Minnesota Secretary of State. Fenske, however,

did not seek authorization from the Banks, which allegedly violated the Uniform Commercial

Code ("UCC"). Fenske then allegedly misrepresented to Mercantile that the Security Interests

had been properly released. Specifically, Mercantile alleges that Fenske "facilitated the creation

of transaction documents" which were mailed to Mercantile in Illinois which represented and

warranted that the Hockey Team was "free and clear of any encumbrances" and prepared an

opinion letter ("the Opinion Letter") for Mercantile stating that the transaction would not violate

any governmental rule and did not need any governmental approval or action to be completed.

---

[1]     The facts in the Background section are taken from Mercantile's Amended Complaint
("the Complaint") and only pertain to the issues currently before the Court.

[2]     Defendants Patrick and Catherine Forceia are the principal owners of Agenzi, which
owned RoughRiders Minnesota, which in turn owned the Team.

After learning that the Hockey Team's assets were still encumbered, Mercantile brought this action against Fenske alleging "wrongful termination of a security interest" (Count VII), negligent misrepresentation (Count VIII), and fraudulent concealment (Count IX). Fenske now moves to dismiss for: (I) lack of personal jurisdiction; (II) improper venue; and (3) failure to state a claim. In the alternative, Fenske seeks to have this matter transferred to Minnesota. The Court will discuss each of these issues in turn.

## ANALYSIS

### I.    Personal Jurisdiction

In ruling on a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, the court may consider matters outside the pleadings, such as affidavits and other materials submitted by the parties. O'Hare Int'l Bank v. Hampton, 437 F.2d 1173, 1176 (7th Cir. 1971). The plaintiffs bear the burden of establishing personal jurisdiction by a preponderance of the evidence. Turnock v. Cope, 816 F.2d 332, 333 (7th Cir. 1987). The court must resolve any factual disputes in the plaintiffs' favor, and accept the allegations in the plaintiffs' complaints as true only to the extent that they are not controverted by other evidence in the record. Id. The court must also accept uncontested jurisdictional facts presented by the defendants as true. Connolly v. Samuelson, 613 F. Supp. 109, 111 (N.D. Ill. 1985).

A federal court sitting in diversity has personal jurisdiction over nonresident defendants only if jurisdiction would be proper in the state in which the federal court sits. Michael J. Neuman & Assocs., Ltd. v. Florabelle Flowers, Inc., 15 F.3d 721, 724 (7th Cir. 1994). Non-residents are subject to jurisdiction in Illinois if: (1) they fall under one of the provisions of the

Illinois long-arm statute; and (2) due process would not be violated. <u>Heritage House Restaurants, Inc. v. Continental Funding Group, Inc.</u>, 906 F.2d 272, 279 (7th Cir. 1990).

Mercantile contends that section 2-209(a)(2) of the Illinois long-arm statute is applicable here because Fenske knowingly sent "numerous" false communications to Illinois which were intended to facilitate the scheme to defraud Mercantile. Under section 2-209(a)(2), "a single tortious act occurring in Illinois will establish jurisdiction in Illinois, even though the defendant has no other contact in Illinois and has never been to Illinois." <u>Mergenthaler Linotype Co. v. Leonard Storch Enter. Inc.</u>, 383 N.E.2d 1379, 1384 (Ill. App. Ct. 1978). Courts have broadly construed the term "tortious act" to include acts beyond those which "create common law liability" to include "any act that constitutes a breach of duty to another imposed by law." <u>Vlasak v. Rapid Collection Sys., Inc.</u>, 962 F. Supp. 1096, 1100 (N.D. Ill. 1997). <u>See also Ohio-Sealy Mattress Mfg. Co. v. Kaplan</u>, 429 F. Supp. 139, 140 (N.D. Ill. 1977) ("[t]he word 'tortious' . . . is not restricted to the technical definition of a tort, but also includes any act committed within the state which involves a breach of duty to another and makes the actor liable for damages").

Although mail from a foreign defendant to an Illinois plaintiff is insufficient by itself to provide a basis for the exercise of personal jurisdiction, <u>Greenberg v. Miami Children's Hosp. Research Inst., Inc.</u>, 208 F. Supp. 2d 918, 926 (N.D. Ill. 2002), mailings by non-resident defendants to Illinois residents sent with an intent to further a fraudulent scheme and affect interests in Illinois are sufficient to confer jurisdiction over the non-resident defendant under section 2-209(a)(2). <u>See Heritage House Restaurants, Inc.</u>, 906 F.2d at 282 ("telephone conversations initiated by [the non-resident defendant] and placed to [the plaintiff] in Illinois"

4

which "evidenced an intent to defraud" meet section 2-209(a)(2)'s requirements); FMC Corp. v. Varonos, 892 F.2d 1308, 1313 (7th Cir. 1990) (finding that "communications" made "in furtherance of [a] scheme to defraud" an Illinois resident fell within the scope of section 2-209(a)(2)); Cross v. Simons, 729 F. Supp. 588, 592 (N.D. Ill. 1989) (Williams, J.) (holding that section 2-209(a)(2) implicated where non-resident defendant mailed document "replete with misrepresentations" to Illinois plaintiff with intent to adversely affect plaintiff's "interests"); McClub Serv., Inc. v. Stovall, 714 F. Supp. 370, 371-73 (N.D. Ill. 1989) ("the mailing of . . . messages into Illinois that constitute part of the tortious conduct, coupled with an intent to affect Illinois interests, satisfies the requirements of section 2-209(a)(2)"); Club Assistance Program, Inc. v. Zukerman, 594 F. Supp. 341, 346-47 (N.D. Ill. 1984) (same); Beigle & Sandler v. Weinstien, 1992 WL 357523, at *2 (N.D. Ill. Nov. 24, 1992) (same).

Here, in Count VIII Mercantile alleges that Fenske "negligently misrepresented" that the Security Interests had been released. Fenske allegedly sent copies of the false termination filings to Mercantile in Illinois. Despite knowing that the releases were not valid, Fenske is also alleged to have "facilitated the creation of transaction documents" which were mailed to Mercantile in Illinois which represented and warranted that the Hockey Team was "free and clear of any encumbrances." Fenske also mailed the Opinion Letter to Mercantile in Illinois essentially stating that the transaction would not violate any governmental rule and did not need any governmental approval or action to be completed. Based on these allegations, this Court finds that Mercantile has plead sufficient facts to come within section 2-209(a)(2) because Mercantile alleges that

Fenske mailed documents to Mercantile in Illinois, which contained material misrepresentations in furtherance of the scheme to defraud Mercantile.[3]

Although this Court has jurisdiction over Fenske under the Illinois long-arm statute, federal due process also requires that the exercise of personal jurisdiction over a nonresident defendant be reasonable (i.e., the defendant has "minimum contacts" with the selected forum) and not offend "traditional notions of fair play and substantial justice." Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945).[4] Under this determination, the court examines: (1) the interest of the state in providing a forum to the plaintiff; (2) the interest of the state in regulating the activity involved; (3) the burden of defense in the forum on the defendant; (4) the relative burden of prosecution elsewhere on the plaintiff; (5) the extent to which the claim is related to the defendant's local activities; and (6) the avoidance of a multiplicity of suits on conflicting adjudications. See Asahi Metal Inds. Co. v. Super. Ct. of Cal., 480 U.S. 102, 115 (1987); Burger

---

[3]     Fenske contends that this Court should test each count for whether it meets the requirements of section 2-209(a)(2). Such a determination is unnecessary. While it is true that Counts VII and IX do not involve a communication sent to Illinois, all three counts are derived from the same set of operative facts – Fenske's misrepresentation of the actual status of the Security Interests.

[4]     With respect to due process under the Illinois Constitution, Illinois courts "have given little guidance as to how state due process protection differs from federal protection in the context of personal jurisdiction." RAR, Inc. v. Turner Diesel Ltd., 107 F.3d 1272, 1276 (7th Cir. 1997). Id. As a general rule, "'jurisdiction [under the Illinois constitution] is to be asserted only when it is fair, just, and reasonable . . . considering the quality and nature of the defendant's acts which occur in Illinois or which affect interests located in Illinois.'" Id. (quoting Rollins v. Ellwood, 565 N.E.2d 1302, 1316 (Ill. 1990)). Without specific guidance from Illinois courts, federal courts sitting in diversity in Illinois focus on federal due process in determining if Illinois due process guarantees are satisfied. See Mors v. Williams, 791 F. Supp. 739, 743 (N.D. Ill. 1992). Consequently, absent a clear indication that exercise of jurisdiction here violates the Illinois Constitution, this Court will rely on its federal analysis of jurisdiction to determine if personal jurisdiction comports with Illinois due process.

King Corp. v. Rudzewicz, 471 U.S. 462, 472-73, 476-77 (1985). Because no one factor is dispositive, the court must balance all of the factors. Euromarket Designs, Inc. v. Crate & Barrel Ltd., 96 F. Supp. 2d 824, 840 (N.D. Ill. 2000). However, the most important factors to consider are the interests of the forum and the relative convenience of the defendant in litigating in that forum. Kohler Co. v. Kohler Int'l, Ltd., 196 F. Supp. 2d 690, 700 (N.D. Ill. 2002). It is well-settled, however, that a party which directs its activities at the forum state bears the burden of presenting a "compelling case" that jurisdiction in the chosen forum is unreasonable. Burger King, 471 U.S. at 477.

Illinois has a strong interest in adjudicating injuries that occur within its borders. Coolsavings.com, Inc. v. IQ.Commerce Corp., 53 F. Supp. 2d 1000, 1005 (N.D. Ill. 1999). This interest is especially strong in cases involving torts within Illinois' borders. M/H Group v. Macsoft, Inc., No. 86 C 8163, 1987 WL 7823, at *3 (N.D. Ill. March 9, 1987) (states have a special interest in exercising jurisdiction over those who commit torts within its jurisdiction). An individual injured in Illinois need not go to another state to seek redress from persons who, though remaining in that other state, knowingly committed a tort causing an injury in Illinois. See Calder v. Jones, 465 U.S. 783, 790 (1984).

Moreover, it would not be unduly burdensome for Fenske to litigate in Illinois. Euromarket Designs, Inc. v. Crate & Barrel, Ltd., 96 F. Supp. 824, 840 (N.D. Ill. 2000)(unless the inconvenience of having to litigate in the forum is so great as to deprive the defendant of due process, it will not overcome clear justifications for the exercise of jurisdiction). Traveling from Minnesota, where Fenske is located, to Illinois is not oppressive. See id. (modern advances in

7

transportation and communication make it more reasonable to litigate in a foreign forum).

Therefore, this Court holds that it would not be unreasonable to exercise personal jurisdiction over Fenske.

Accordingly, because this Court finds that personal jurisdiction is proper under the Illinois long-arm statute and the Constitution, the Rule 12(b)(2) motion to dismiss is DENIED.

## II. Venue

Fenske also contends that venue in this district is improper under 28 U.S.C. § 1391(b)(2)[5] and therefore moves to either dismiss this action, pursuant to Rule 12(b)(3), or transfer this case to Minnesota, under to 28 U.S.C. 1404(a).

Under section 1391(a)(2), a civil action founded upon diversity may be brought "only in . . . a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred . . . ." (Emphasis added.) Fenske contends that Mercantile cannot meet the "substantial part" requirement because all of its alleged conduct occurred in Minnesota. While this might well be true, Fenske forgets that the test is not whether a "majority" of the events occurred in the chosen venue. TruServ Corp. v. Neff, 6 F. Supp. 790, 792 (N.D. Ill. 1998). "A substantial portion of the events can occur in more than one place, and thus, venue can be proper in more than one district." Id. See also Country Home Products, Inc. v. Schiller-Pfeiffer, Inc. 2004 WL 2955939, at *5 (D. Vt. 2004) ("Venue may exist in more than one district and the plaintiff is not required to establish that his chosen venue has the most substantial contacts to the dispute; rather,

---

[5]     Although the litigants cite to subsection (b)(2), this Court will apply subsection (a)(2). Both contain the same substantive language, except that subsection (a)(2) applies to cases where jurisdiction is founded upon diversity. Because Mercantile's claims against Fenske rest upon diversity, this Court will look to subsection (a)(2).

it is sufficient that a substantial part of the events occurred [in the chosen district], even if a greater part of the events occurred else where").

The issue before this Court thus is whether a substantial portion the events giving rise to Mercantile's claims for misrepresentation and fraud occurred in this district. To meet the substantial portion test, the events or omissions must have more than "some tangential connection" to the chosen venue. Cottman Transmission Sys., Inc. v. Martino, 36 F.3d 291, 294 (3d Cir. 1994). Congress included the "substantial" language in section 1391(a)(2) "to preserve the element of fairness so that a defendant is not haled into some remote district having no real relationship to the dispute." Id. When determining whether the substantial portion requirement is met, courts examine the location of the events giving rise to the claims alleged by the plaintiff and "the nature of the dispute." Id. at 295.

Following these standards, courts examining venue under section 1391(a)(2) in misrepresentation and fraud cases have held that venue is proper in the district to which a document containing the misrepresentation at issue was sent. For example, in Fogelson v. Iatrides, 2000 WL 631293, at *1 (N.D. Ill. May 12, 2000), an Illinois plaintiff brought an action for fraudulent misrepresentation against defendants from Indiana. The plaintiff alleged that the defendants misrepresented their interest in selling him a parcel of land in Indiana. Id. at *2. The defendants moved to dismiss on the grounds that a substantial portion of the events giving rise to the claim did not occur in Illinois. Id. at *2-3. In rejecting this contention, the court noted that "1392(a) may be satisfied by a communication transmitted to . . . the district in which the cause of action was filed, given a sufficient relationship between the communication and the cause of

9

action." Id. at *3.  The court thus concluded that venue was proper because the documents containing the alleged misrepresentation, which were the center of the plaintiff's claim, were sent to the plaintiff in Illinois.  Id. at *3.  See also Print Data Corp. v. Morse Fin., Inc., 2002 WL 1625412, at *6 (D. N.J. July 12, 2002) (venue appropriate under section 1391(a)(2) in district where fraudulent statements were sent and where the plaintiffs relied on the statements).

Here, the Forceia Defendants allegedly devised a scheme to defraud Mercantile by selling them a 75% interest in the Hockey Team for $2.1 million.  To complete this sale, however, the Forceia Defendants had to hide the fact that the Hockey Team's assets "were significantly impaired by a security interest" relating to a $1.1 million debit.  Mercantile alleges that Fenske assisted the Forceia Defendants in hiding this fact by "negligently misrepresenting" that the Security Interests had been released.  Fenske allegedly sent copies of the false termination filings to Mercantile in Illinois.  Despite knowing that the releases were not valid, Fenske is also alleged to have "facilitated the creation of transaction documents" which were mailed to Mercantile in Illinois which represented and warranted that the Hockey Team was "free and clear of any encumbrances."  Fenske also mailed the Opinion Letter to Mercantile in Illinois which contained misstatements regarding the Team's assets.  In reaching its decision to purchase the Hockey Team, Mercantile alleges that it relied on these misrepresentations in this district. Consequently, this Court finds that Mercantile has alleged sufficient facts to show that "a substantial part of the events or omissions giving rise" to its misrepresentation claim occurred in this district.

10

In the alternative, Fenske contends that this Court should transfer this action to Minnesota, pursuant to 28 U.S.C. § 1404(a), which provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." Applying section 1404(a), courts find that transfer is appropriate if: (1) venue is proper in both the transferor and transferee district; (2) the transfer is consistent with the convenience of the parties and witnesses; and (3) the transfer is in the interest of justice. Heller Financial, Inc. v. Midwhey Powder Co., 883 F.2d 1286, 1293 (7th Cir. 1989); Rouse Woodstock, Inc. v. Surety Fed. Sav. & Loan Ass'n, 630 F. Supp. 1004, 1007-08 (N.D. Ill. 1986). As explained above, venue is appropriate in both this district and in Minnesota. The Court will thus examine whether the convenience and interest of justice factors support a transfer.

Courts consider five factors when evaluating the convenience factor: (A) the plaintiff's choice of forum; (B) the site of material events; (C) the access to evidence; (D) the convenience of the witnesses; and (E) the convenience to the parties of litigating in each forum. Brandon Apparel Group v. Quitman Manuf. Co. Inc., 42 F. Supp. 2d 821, 833 (N.D. Ill. 1999); College Craft Cos. Ltd. v. Perry, 889 F. Supp. 1052, 1054 (N.D. Ill. 1995).

The plaintiff's choice of forum is generally entitled to substantial deference unless the court determines that the plaintiff's choice of forum lacks "any significant connection to the underlying claim." General Accident Ins. Co. v. Travelers Corp., 666 F. Supp. 1203, 1206 (N.D. Ill. 1987). Here, as explained above, this Court finds that Illinois has a strong connection to the

11

alleged misrepresentations which form the basis of Mercantile's claims against Fenske. The Court will therefore give Mercantile's choice of forum its due deference.

Courts view the convenience of witnesses factor as the most important factor in determining whether transfer is appropriate. Brandon, 42 F. Supp. 2d at 834; Rose v. Franchetti, 713 F. Supp. 1203, 1214 (N.D. Ill. 1989). The determination of the convenience of the witnesses is not dependant upon the length of the parties' witness lists. Id. Rather, courts look to the quality of the testimony with respect to the issues. Id. Additionally, courts must consider whether the witnesses "can be compelled to testify" in the chosen venue. American Feeds & Livestock Co., Inc. v. Van Veeldhuisen,1986 WL 8023, at *4 (N.D. Ill. July 15, 1986). When considering the convenience of the parties, courts consider their location and ability to bear the expenses of litigating in each forum. Brandon, 42 F. Supp. 2d at 834. Courts, however, should not transfer an action if the transfer will simply "transform an inconvenience for one party into an inconvenience for another party." Id.

Here, Fenske has not set forth any witnesses or evidence which will be unavailable in this district. Accordingly, this factor does not support transfer. See Met-L-Wood Corp. v. SWS Indus., Inc., 594 F. Supp. 706, 710 (N.D. Ill. 1984) (noting that location of witnesses and documents in alternative forum is only a factor where the movant shows inconvenience in bringing them to selected forum).

The next factor, whether the transfer will aid the "interest of justice," "embraces the traditional notions of judicial economy, rather than the private interests of the litigants and their witnesses." Brandon, 42 F. Supp. 2d at 834-35. In determining the interest of justice, courts must

12

consider: (A) the speed at which the case will proceed; (B) the court's familiarity with the law that governs the action; and (C) the relation of the locale to the controversy and the desirability of settling the matter in that forum. Id.

Applying the above factors, this Court finds that the interests of justice favor keeping the action in this venue. Fenske has not presented any evidence that: (1) this case will proceed faster in Minnesota than in this district; or (2) a Minnesota court would be more familiar with the relevant law than this Court. Additionally, Illinois has a very strong interest in settling this action. Illinois, like all states, has a very strong interest in litigating actions involving fraud occurring in Illinois. This Court thus finds that the public interests factors weigh in favor of keeping this action here.

Consequently, based on Mercantile's choice of forum and the public interest factors, this Court DENIES Fenske's request to transfer this case to Minnesota.

**III.    Failure to State a Claim**

Fenske also seeks to dismiss, pursuant to Rule 12(b)(6), for failure to state a claim. In ruling on a motion to dismiss pursuant to Rule 12(b)(6), the court must assume the truth of all facts alleged in the pleadings, construing allegations liberally and viewing them in the light most favorable to the non-moving party. See, e.g., McMath v. City of Gary, 976 F.2d 1026, 1031 (7th Cir. 1992); Gillman v. Burlington N. R.R. Co., 878 F.2d 1020, 1022 (7th Cir. 1989). Dismissal is properly granted only if it is clear that no set of facts which the plaintiff could prove consistent with the pleadings would entitle the plaintiff to relief. Conley v. Gibson, 355 U.S. 41, 45-46

(1957); Kunik v. Racine County, Wis., 946 F.2d 1574, 1579 (7th Cir. 1991) (citing Hishon v. King & Spalding, 467 U.S. 69, 73 (1984)).

The court will accept all well-pled factual allegations in the complaint as true. Miree v. DeKalb County, 433 U.S. 25, 27 n.2 (1977). In addition, the court will construe the complaint liberally and will view the allegations in the light most favorable to the non-moving party. Craigs, Inc. v. General Electric Capital Corp., 12 F.3d 686, 688 (7th Cir. 1993). However, the court is neither bound by the plaintiff's legal characterization of the facts, nor required to ignore facts set forth in the complaint that undermine the plaintiff's claims. Scott v. O'Grady, 975 F.2d 366, 368 (7th Cir. 1992).

Fenske contends that Mercantile has not alleged sufficient facts to plead a claim for: (A) wrongful termination of a security interest; (B) negligent misrepresentation; or (C) fraudulent concealment. The Court will address each of these contentions in turn.

## A.    Wrongful Termination of a Security Interest

Fenske asserts that even if it wrongfully terminated the Security Interests, Mercantile does not have a cause of action because UCC section 9-509(d)(1) "provides no right of action by a third party" who is not a debtor or obligor with an interest in the subject property. Although neither party nor this Court has found any case law on this issue, Fenske's argument appears correct. Section 9-509(d)(1) provides that a person may file a statement terminating a security interest "only if . . . the secured party of record authorizes the filing." See also Official Comment No. 6 to Section 9-509. Section 9-625 provides for the remedies available for "unauthorized fillings" that violate section 9-509. Id. Comment No. 3. The plain language of section 9-625(c)

and (e), provides that only a "debtor, . . . obligor, or [person holding] a security interest" may recover damages for its loss. See also Official Comment No. 3 to Section 9-625. Accordingly, this Court finds Mercantile does not have a cause of action under UCC section 9-509(d) and thus, GRANTS the 12(b)(6) motion as to Count VII.

### B.     Negligent Misrepresentation

Fenske also contends that Mercantile has failed to adequately plead a claim for negligent misrepresentation under Illinois law because: (1) Fenske did not owe a duty to supply Mercantile with accurate information; and (2) the Complaint does not state sufficient facts to allege proximate causation or reasonable reliance.[6]

Illinois law generally does not impose a duty to provide accurate information unless the defendant is in the "business of providing information for the guidance of others in business dealings." Guar. Residential Lending Inc. v. Int'l Mortgage Center, Inc., 305 F. Supp. 2d 846, 863 (N.D. Ill. 2004). This exception is usually applied to "pure information" providers such as banks providing credit information to a potential lender, real estate agents, title companies, and stock brokers. Fox Assocs., Inc. v. Robert Half Int'l, Inc., 777 N.E.2d 603, 607-08 (Ill. App. Ct. 2002). In determining if such a duty exists, courts generally must make a "precise, case-specific inquiry." Guar. Residential Lending Inc. v. Int'l Mortgage Center, Inc., 305 F. Supp. 2d at 863.

---

[6]     To state a claim for negligent misrepresentation, the plaintiff must allege that the defendant: "(1) made a negligent misrepresentation of material fact; (2) is in the business of providing investment information; and (3) made the misrepresentation while guiding [the plaintiff] in [its] business relations with third parties." Lennon v. Christoph, 1997 WL 57150, at *26 (N.D. Ill. Feb. 7, 1997). The "pivotal[]" inquiry in determining whether the defendant is "in the business of supplying investment information," is whether the defendant is "in the business of supplying information for the guidance of other[s] in their transactions." Canel v. Lincoln Nat'l Bank, 1998 WL 1760544, at *9 (N.D. Ill. Aug. 6, 1998).

15

While "supplying information need not encompass" the parties' "entire" business dealings, it must have been "central to business transaction between the parties." Fox Assocs., Inc., 777 N.E.2d at 607. The court thus must carefully examine "the nature of the information at issue and its relation to the kind of business being conducted" and what was the "ultimate" goal of the parties' business transaction. Id. at 608-09.

For a non-client to make a claim of negligent misrepresentation against an attorney, the non-client must allege more than the fact that the attorney supplied information to it to facilitate a transaction between the client and the non-client. See Astor Chauffeured Limousine Co. v. Runnfeld Investment Co., 1988 WL 101267, at *5-6 (N.D. Ill. Sept. 1988) (rejecting a broad proposition that attorneys are in the business of supplying information and thus have a general duty to provide accurate information to non-clients). Instead, the court must closely examine the transaction between the client and the non-client and what role the attorney played in the deal. Id. For an attorney to have a duty to provide accurate information to a non-client, the non-client must allege that "the primary purpose and intent of the attorney-client relationship itself was to benefit or influence the third party." Greycas v. Proud, 826 F.2d 1560, 1563-64 (7th Cir. 1987). See also Wafra Leasing Co. v. Prime Capital Corp., 192 F. Supp. 2d 852, 874 (N.D. Ill. 2002); Astor Chauffeured Limousine Co.,1988 WL 101267, at *5-6.

In cases where a duty was found to lie, the client retained the attorney for the limited purpose of supplying the non-client information to facilitate a particular business transaction. For example, in Greycas, 826 F.2d at 1562, the attorney was retained to assist in the completion of a loan. Pursuant to the loan agreement, the prospective borrower retained the attorney for the

sole purpose of conducting a search for existing liens on the collateral. Id. The attorney, despite

not conducting a lien search, sent a letter to the lender/non-client stating that there were no liens

on the collateral. Id. After it turned out that there were existing liens, the non-client sued the

attorney for negligent misrepresentation. Id. Affirming judgment against the attorney, the

Seventh Circuit held that the attorney had a duty to supply the non-client with accurate

information because the client retained the attorney for the sole purpose of supplying information

to the non-client to facilitate the transaction between his client and the non-client. Id. at 1563-65.

Similarly, in Wafra Leasing Co., 192 F. Supp. 2d at 858, 874, a non-client sued an

attorney who prepared an opinion letter valuing assets which the non-client later purchased. In

denying the attorney's motion to dismiss, the court noted that the non-client sufficiently pled

negligent misrepresentation by alleging that the client retained and directed the attorney to draft

the opinion letter, which was intended to benefit a third-party in the transaction with the non-

client. Id.

Here, while the scope of Fenske's retention is not as clear as the attorneys in Greycas and

Wafra, construing the Complaint liberally and viewing the allegations in the light most favorable

to Mercantile, this Court holds that Mercantile has pled sufficient facts to allege that Fenske was

retained to facilitate the scheme to defraud Mercantile. To complete the sale of the Team, the

Forceia Defendants had to hide the fact that the Hockey Team's assets "were significantly

impaired by a security interest" relating to a $1.1 million debit. According to Mercantile, Fenske

helped to hide the existence of the Security Interests by: (1) preparing and filing termination

notices of the Security Interests without determining whether the underlying debts were paid; (2)

17

negligently misrepresenting that the Security Interests had been released; (3) "facilitat[ing] the creation of transaction documents" which were mailed to Mercantile in Illinois which represented and warranted that the Hockey Team was "free and clear of any encumbrances; and (4) preparing and mailing the Opinion Letter to Illinois. Accordingly, at this time, the Court finds that Mercantile has set forth sufficient facts to plead that Fenske had a duty to supply it with accurate information.

Additionally, this Court finds that Mercantile has pled sufficient facts to allege proximate causation and reasonable reliance. Mercantile alleges that in entering into the agreement to purchase the Team, it relied on Fenske's representations that the Hockey Team was "free and clear of any encumbrances" and that it had terminated the existing security interests. As for causation, Mercantile alleges that it was injured "by paying $2.1 million for encumbered assets that it was led to believe were unencumbered."

Consequently, this Court holds that Mercantile has adequately pled a claim for negligent misrepresentation against Fenske.

### D.    Fraudulent Concealment

Fenske also contends that Mercantile has failed to state a claim for fraudulent concealment because it has not alleged that Fenske had a duty to disclose adverse information or that Mercantile relied on Fenske's misstatements.

Under Illinois law, the failure to disclose material information is actionable "only if the person failing to disclose the information 'owed a duty to disclose that information." Lefebvre Intergraphics, Inc. v. Sanden Mach. Ltd., 946 F. Supp. 1358, 1366 (N.D. Ill. 1996). Such a duty

arises when the defendant: (1) owed the plaintiff a duty "to make full and fair disclosure and fail[ed] to correct a misapprehension of material fact"; or (2) contributed to a misapprehension of material fact and "intentionally fail[ed] to correct [the] misapprehension." Id.

Here, as explained above, Mercantile has alleged that Fenske owed it a duty to provide accurate information. Therefore, on November 26, 2003, when the Purchase Agreement was executed, even if Fenske did not know that the termination of the Security Interests were not valid, once it learned that they were not, on December 1, 2003, it had a duty to inform Mercantile. Indeed, Mercantile alleges that it had numerous opportunities, including a face-to-face meeting in early April of 2003. Instead, not only did Fenske remain silent, but on March 16, 2003, unbeknownst to Mercantile, Fenske filed a statement reinstating the Security Interests. Accordingly, this Court finds that Mercantile has sufficiently alleged that Fenske had a duty to disclose the truth about the security interests.

Fenske also contends that Mercantile has not fulfilled the requirements under Rule 9(b), which provides that "the circumstances constituting fraud . . . shall be stated with particularity." Fed. R. Civ. P. 9(b). Circumstances constituting fraud "include the identity of the person who made the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff." General Elec. Capital v. Lease Resolution, 128 F.3d 1074, 1078 (7th Cir.1997). In other words, Rule 9(b) requires a plaintiff to plead "the who, what, when, where and how" of the fraud. DiLeo v. Ernst & Young, 901 F.2d 624, 627 (7th Cir.1990). Here, as detailed above, a careful review of the

19

Complaint reveals that Plaintiffs have adequately pled facts setting forth the time place and content of Fenske's alleged misrepresentations.

Accordingly, this Court holds that Mercantile has adequately pled a claim for fraudulent concealment against Fenske.

## CONCLUSION

For the reasons discussed above, this Court:

- DENIES the motion to dismiss under Rules 12(b)(2) and 12(b)(3);

- DENIES Fenske's section 1404(a) request to transfer;

- DENIES the to motion to dismiss under Rules 12(b)(6) and 9(b) as to Counts VIII and IX but GRANTS the motion as to Count VII.

It is so ordered.

ENTER:

DATE: 2/10/05

BLANCHE M. MANNING
U.S. DISTRICT COURT JUDGE